2016 COA 5

**LIBERTARIAN PARTY OF COLORADO**
and Gordon Roy Butt, Plaintiffs–
Appellants,

v.

Wayne WILLIAMS, in his official capacity
as Colorado Secretary of State; Chuck
W. Broerman, in his official capacity as
El Paso County Clerk and Recorder; and
Gilbert Ortiz, in his official capacity as
Pueblo County Clerk and Recorder, De-
fendants–Appellees.

Court of Appeals No. 14CA2063

Colorado Court of Appeals,
Div. III.

Announced January 14, 2016

The Matthew C. Ferguson Law Firm P.C., Matthew C. Ferguson, Michelle K. Schindler, Aspen, Colorado, for Plaintiffs–Appellants.

Cynthia H. Coffman, Attorney General, Amy Colony, Senior Assistant Attorney General, Matthew D. Grove, Assistant Solicitor General, Denver, Colorado, for Defendants–Appellees.

Opinion by JUDGE BERGER

¶ 1 The Libertarian Party of Colorado and two recall election candidates, Richard Anglund and Gordon Roy Butt, sued Wayne Williams, in his official capacity as the Colorado Secretary of State, Chuck W. Broerman, in his official capacity as the El Paso County Clerk and Recorder, and Gilbert Ortiz, in his official capacity as the Pueblo County Clerk and Recorder (collectively, the Secretary) alleging that a statutory deadline for filing candidate petitions conflicted with the Colorado Constitution.[1] The Libertarian Party also asserted that the statutory deadline violated its First and Fourteenth Amendment rights, and it sought declaratory and injunctive relief (but not damages) under 42 U.S.C. § 1983 (2012) and attorney fees under 42 U.S.C. § 1988 (2012).

¶ 2 The district court granted relief on the state election law claim but did not address the § 1983 and § 1988 claims. On the Libertarian Party's motion for summary judgment on its federal claims, the court ruled that its judgment on the state election law claim, coupled with the supreme court's order denying review of the state claim, constituted a final adjudication on the *entire* case. Alternatively, the court ruled that the section 1983 and 1988 claims were moot because the General Assembly had since amended the offending state statute. Accordingly, the court denied the Libertarian Party's summary judgment motion and dismissed the remainder of the case. The Libertarian Party appeals.

¶ 3 We hold that neither the district court's judgment on the state election law claim nor the supreme court's order denying review of the district court's judgment constituted an adjudication of the § 1983 and § 1988 claims. We affirm the district court's ruling that the § 1983 claim was moot. But, under federal law, which governs § 1988 claims for attorney fees, that mootness does not necessarily preclude the Libertarian Party's claim for attorney fees under § 1988. We conclude that further proceedings in the district court are necessary to determine if the Libertarian Party is entitled to attorney fees under § 1988. Therefore, we reverse the judgment denying attorney fees and remand for the district court to determine whether the Lib-

---

1. Richard Anglund was a plaintiff in the district court, but is not a party to this appeal. For convenience, we refer to Butt and the Libertarian Party collectively as the "Libertarian Party."

ertarian Party is entitled to recover its attorney fees, and if so, in what amount.

## I.  Relevant Facts and Procedural History

¶ 4 Anglund, a Democratic Party candidate, and Butt, a member of the Libertarian Party, requested the Secretary's approval to circulate petitions as successor candidates in a General Assembly recall election. The Secretary denied their requests because they were submitted after a deadline imposed by a Colorado statute, Ch. 170, sec. 8, § 1–12–117(1), 2014 Colo. Sess. Laws 621, and a regulation adopted by the Secretary.

¶ 5 Together with the Libertarian Party, Anglund and Butt sued the Secretary under section 1–1–113, C.R.S.2015, of the Colorado Election Code, which provides expedited adjudication procedures, including a direct appeal from the district court's judgment to the Colorado Supreme Court. The Libertarian Party contended that the Secretary violated its constitutional right of access to the ballot because the statutory deadline conflicted with a later deadline set forth in article XXI, section 3 of the Colorado Constitution. Its complaint also summarily asserted that the alleged impingement upon its right of access to the ballot violated its rights under the First and Fourteenth Amendments of the United States Constitution.

¶ 6 The Libertarian Party asked the district court (1) to order the Secretary to accept candidate petitions until the state constitutional deadline and to refrain from circulating ballots until after that deadline had expired; (2) for injunctive and declaratory relief (but not damages) under § 1983; and (3) for attorney fees under § 1988.

¶ 7 In expedited proceedings under the Colorado Election Code, the district court held that the state statute conflicted with the Colorado Constitution and thus was void. It ordered the Secretary to enforce only the state constitutional deadline, but it did not address the Libertarian Party's § 1983 and § 1988 claims.[2]

¶ 8 The Secretary filed an immediate appeal to the Colorado Supreme Court, as au-

thorized by section 1–1–113(3). Because of an equally divided court, the supreme court denied review and ordered that the decision of the district court was final and "not subject to further appellate review." *Libertarian Party v. Ortiz,* (Colo. No. 13SA206, Aug. 15, 2013) (unpublished order).

¶ 9 The Libertarian Party then moved for summary judgment, asking the district court to adjudicate its § 1983 claim and to award it attorney fees under § 1988. After initially agreeing with the Libertarian Party that the supreme court's order on the state law issue was not dispositive of the § 1983 or § 1988 claims, the district court later shifted course and ruled that the entire case ended when the supreme court entered its order affirming the district court's judgment on the state election law claim. The district court concluded that because the supreme court's order constituted a final judgment, the only way the Libertarian Party could seek an adjudication of its § 1983 and § 1988 claims was to file a motion for amendment of the judgment under C.R.C.P. 59. Because the Libertarian Party had not done so, the district court held that the federal claims had effectively been dismissed. The district court also ruled that the § 1983 claim was moot because the General Assembly had since amended the offending statute.

## II.  Final Judgment on the Libertarian Party's § 1983 Claim

■ ¶ 10 We agree with the Libertarian Party that neither the district court's judgment on the state election law claim nor the supreme court's order denying review of that claim divested the district court of jurisdiction over the § 1983 or § 1988 claims.

¶ 11 Colorado law permits the joinder of a § 1983 claim with a claim under section 1–1–113. *Brown v. Davidson,* 192 P.3d 415, 418–19 (Colo.App.2006). However, the Secretary has not cited, nor have we found, any Colorado case holding that when those claims are joined, adjudication of only the state election law claim also constitutes an adjudication of the joined § 1983 claim. Basic principles of civil procedure compel the opposite conclu-

---

**2.** Ultimately, neither Anglund nor Butt qualified for the ballot.

sion. Because the § 1983 and § 1988 claims were not addressed by either the district court or the supreme court when the state election law claim was adjudicated, those claims remained unadjudicated and the district court continued to have jurisdiction over them.

¶ 12 This conclusion also disposes of the Secretary's argument (and the district court's conclusion) that because the Libertarian Party did not file a C.R.C.P. 59 motion to amend the judgment, the court was without jurisdiction to decide those claims. Because no final judgment had been entered (until the district court's denial of the Libertarian Party's motion for summary judgment), C.R.C.P. 59 did not authorize, much less require, the filing of a motion to reconsider the § 1983 or § 1988 claims.[3]

¶ 13 However, there is now a final judgment on the constitutional claims: the district court's order denying the Libertarian Party's motion for summary judgment. Generally, an order denying a motion for summary judgment is not final. *Feiger, Collison & Killmer v. Jones,* 926 P.2d 1244, 1247 (Colo.1996). But, where such a denial disposes of the entire case, as here, it is a final judgment. *In re Estate of Scott,* 119 P.3d 511, 515 (Colo.App.2004), *aff'd sub nom. Scott v. Scott,* 136 P.3d 892 (Colo.2006).

### III. Mootness of the Libertarian Party's § 1983 Claim

¶ 14 The Libertarian Party contends that the district court erred in holding that its § 1983 claim was moot. We disagree and affirm that aspect of the district court's judgment.

¶ 15 We review de novo whether a claim is moot. *Colo. Mining Ass'n v. Urbi-*

*na,* 2013 COA 155, ¶ 23, 318 P.3d 562. A claim is moot when the relief sought, if granted, would have no practical legal effect. *Citizens for Responsible Gov't State Political Action Comm. v. Davidson,* 236 F.3d 1174, 1182 (10th Cir.2000); *State Bd. of Chiropractic Exam'rs v. Stjernholm,* 935 P.2d 959, 970 (Colo.1997).[4]

¶ 16 The Libertarian Party sought injunctive and declaratory relief on its § 1983 claim. When the district court ruled in its favor on the state election law claim, the Libertarian Party obtained all the injunctive relief that it sought (or was entitled to) on its § 1983 claim: it had the time provided by the state constitutional deadline to submit candidate petitions, and ballots were not circulated until after the state constitutional deadline had expired.

¶ 17 The General Assembly then amended the offending statute to reconcile the conflicting statutory and constitutional deadlines, mooting the declaratory relief the Libertarian Party sought on its § 1983 claim. A party has "no legally cognizable interest in the constitutional validity of an obsolete statute." *Davidson v. Comm. for Gail Schoettler, Inc.,* 24 P.3d 621, 623 (Colo.2001) (quoting *Citizens for Responsible Gov't,* 236 F.3d at 1182). Thus, we agree with the district court that the Libertarian Party's § 1983 claim was moot.

¶ 18 The Libertarian Party nevertheless argues that it has a right to adjudicate its § 1983 claim because, if it prevails, it would be entitled to attorney fees under § 1988. We reject this contention because the United States Supreme Court and the Colorado Supreme Court have held that a claim for attorney fees alone is an insufficient basis to adjudicate an otherwise moot claim. *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 480, 110

---

3. To the extent that the district court predicated its dismissal of the § 1983 claim on the Libertarian Party's failure to prosecute, the dismissal was improper. Dismissals for failure to prosecute are governed by C.R.C.P. 121, section 1–10(2). Before ordering dismissal for failure to prosecute, a court must issue an order to show cause why the case should not be dismissed. The record demonstrates that no order to show cause was entered; therefore, the court could not dismiss the case for failure to prosecute. We express no opinion on whether the actions or in-

actions of the Libertarian Party could have supported a dismissal for failure to prosecute had C.R.C.P. 121, section 1–10(2) been properly invoked.

4. We need not determine whether state or federal law governs a mootness determination when the substantive claims arise under federal law because the result is the same under both bodies of law.

S.Ct. 1249, 108 L.Ed.2d 400 (1990); *Stjernholm*, 935 P.2d at 972. As explained by the Fourth Circuit in a § 1983 case:

> Although it might be argued that [the plaintiff] retained an interest in receiving a declaratory judgment so as to be a prevailing party for purposes of receiving an award of attorney's fees ... to allow this interest to prevent the claim itself from being moot would be a bootstrap.

*LaFaut v. Smith*, 834 F.2d 389, 395 n.10 (4th Cir.1987).

### IV. Attorney Fees Under § 1988

¶ 19 Under federal law, our affirmance of the district court's ruling that the § 1983 claim was moot is not necessarily determinative of the § 1988 claim for attorney fees. We now address whether the Libertarian Party is a prevailing party entitled to an award of attorney fees under § 1988.

¶ 20 Under the "American rule," each litigant pays its own attorney fees unless a statute or contract provides otherwise. *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. ——, ——, 135 S.Ct. 2158, 2161, 192 L.Ed.2d 208 (2015). Section 1988 authorizes, and United States Supreme Court precedent generally requires, a court to award reasonable attorney fees to prevailing plaintiffs on a § 1983 claim. 42 U.S.C. § 1988(b). In *Hensley v. Eckerhart*, the Court held that a prevailing plaintiff under § 1983 should ordinarily recover attorney fees under § 1988 "unless special circumstances would render such an award unjust." 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (citation omitted). A plaintiff is a prevailing party if it succeeds on a significant issue in litigation that achieves some of the relief sought in bringing the suit. *Id.* at 433, 103 S.Ct. 1933.

¶ 21 If a plaintiff joins a state law claim with a claim under § 1983 and prevails on the state law claim, the plaintiff may be entitled to an award of attorney fees under § 1988 even if the § 1983 claim is never adjudicated. This rule has its genesis in *Maher v. Gagne*, where the Supreme Court held:

> In such cases, if the claim for which fees may be awarded meets the "substantiality"

test, attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a "common nucleus of operative fact."

448 U.S. 122, 132 n. 15, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (citations omitted).

¶ 22 The *Gagne* rule was limited in *Smith v. Robinson*, 468 U.S. 992, 1002, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), *superseded by statute on other grounds*, Handicapped Children's Protection Act of 1986, Pub.L. No. 99–371, 100 Stat. 796. In *Smith*, the plaintiffs brought claims under state law and § 1983. They prevailed on the state law claim, but the district court did not reach the plaintiffs' § 1983 claim because the plaintiffs were entitled to the relief they sought as a matter of state law. Plaintiffs argued, citing *Gagne*, that they were entitled to attorney fees because the claim on which they prevailed and their § 1983 claim arose out of a common nucleus of operative fact, and the § 1983 claim was substantial. The Court rejected the argument that merely satisfying these two elements entitled the plaintiffs to attorney fees. It explained:

> The fact that constitutional claims are made does not render automatic an award of fees for the entire proceeding. Congress' purpose in authorizing a fee award for an unaddressed constitutional claim was to avoid penalizing a litigant for the fact that courts are properly reluctant to resolve constitutional questions if a non-constitutional claim is dispositive. That purpose does not alter the requirement that a claim for which fees are awarded be reasonably related to the plaintiff's ultimate success. It simply authorizes a district court to assume that the plaintiff has prevailed on his fee-generating claim and to award fees appropriate to that success. In light of the requirement that a claim for which fees are awarded be reasonably related to the plaintiff's ultimate success, it is clear that [the] *plaintiffs may not rely simply on the fact that substantial fee-generating claims were made during the course of the litigation. Closer examination of the nature of the claims and the*

*relationship between those claims and petitioners' ultimate success is required.*

468 U.S. at 1007, 104 S.Ct. 3457 (emphasis added) (footnote and citation omitted).[5]

¶ 23 The Court held that because the plaintiffs could not establish a sufficient relationship between the state law and § 1983 claims, they were not entitled to an award of attorney fees under § 1988. *Id.* at 1015, 104 S.Ct. 3457. In so holding, the Court noted that, absent an inquiry into the relationship between the state and federal claims, a plaintiff could manipulate the *Gagne* test for an award of attorney fees even when success on the state claim had no relationship to whether the plaintiff would have been successful on the federal claim, which could not have been Congress' intent in enacting § 1988. *Id.* at 1015–16, 104 S.Ct. 3457.

¶ 24 Three divisions of this court have construed the Supreme Court's language in *Gagne* as requiring the application of a two-part test to determine if attorney fees are awardable under § 1988 when the § 1983 claim has not been, or, as in the circumstances presented here, cannot, because of mootness, be adjudicated. *Beaver Creek Prop. Owners Ass'n v. Bachelor Gulch Metro Dist.,* 271 P.3d 578, 581 (Colo.App.2011); *Brown,* 192 P.3d at 420; *Deighton v. City Council,* 3 P.3d 488, 490 (Colo.App.2000).

¶ 25 The first part of the test requires that the state and federal claims arise from the same nucleus of operative facts. *Beaver Creek,* 271 P.3d at 581. The second part requires that the federal claim be "substantial." Substantiality in this context is defined as not "essentially fictitious," "obviously frivolous," "obviously without merit," or barred by prior Supreme Court decisions. *Id.* at 582; *Brown,* 192 P.3d at 421.

¶ 26 The prior divisions of this court did not cite *Smith,* nor did they address *Smith's* gloss on the *Gagne* rule, perhaps because the relationship issue was not squarely presented in those cases. But that issue is squarely before us. An award of attorney fees under § 1988 is exclusively an issue of federal law,

and because the Supreme Court is the final arbiter of federal law, we must comply with *Smith.*

¶ 27 While *Smith* did not specifically prescribe a three-part test, federal law requires us, and the district court on remand, to consider all three of the considerations addressed in *Smith.* To aid in accomplishing that required task, the Connecticut Supreme Court, applying federal law, set forth a three-part test. *New England Estates, LLC v. Town of Branford,* 294 Conn. 817, 988 A.2d 229, 255 (Conn.2010). That court defined the three elements as follows: (1) the § 1983 claim is sufficiently substantial to support the invocation of federal jurisdiction; (2) the federal claim arises from the same nucleus of operative facts as the state claim on which the plaintiff prevailed; and (3) the federal claim is reasonably related to the plaintiff's ultimate success. *Id.*

¶ 28 Other courts addressing this question, while not requiring the application of a specific three-part test, have uniformly required satisfaction of the common nucleus, substantiality, and relationship elements in one form or another. *See, e.g., Giovanni Carandola, Ltd. v. City of Greensboro,* 258 Fed.Appx. 512, 516–17 (4th Cir.2007); *Paris v. U.S. Dep't of Hous. & Urban Dev.,* 988 F.2d 236, 240 (1st Cir.1993), *overruled on other grounds as recognized in Aronov v. Napolitano,* 562 F.3d 84, 89 n. 5 (1st Cir.2009); *McDonald v. Doe,* 748 F.2d 1055, 1057 (5th Cir.1984).

¶ 29 Irrespective of whether *Smith* requires a strict three-part test, before awarding attorney fees under § 1988 on an unadjudicated § 1983 claim, a court must consider whether: (1) the claim on which the plaintiff prevailed and the unadjudicated federal claim arose from a common nucleus of operative fact; (2) the unadjudicated federal claim was substantial, i.e., not "essentially fictitious," "obviously frivolous," "obviously without merit," or barred by prior decisions; and (3) the unadjudicated federal claim is reasonably related to the plaintiff's ultimate success.

---

5. Neither of the parties cited *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), in their briefs. In Westlaw, the label of "severe negative treatment" appears in the history of *Smith.* But it is clear that the "severe negative treatment" applies to a holding different from the one on which we rely.

¶ 30 Because the Secretary concedes that the first consideration is met, we proceed to the second.

¶ 31 The parties did not address in the district court (and the district court did not make findings on) either the substantiality component under *Beaver Creek* and *Brown* or the inquiry mandated by *Smith* regarding the relationship between the federal and state claims. Because the district court has not made factual findings on this issue, we cannot decide these questions in the first instance. *Scoular Co. v. Denney*, 151 P.3d 615, 620 (Colo.App.2006) (the absence of factual findings regarding key contested issues compels remand to the district court for further factfinding).

¶ 32 Therefore, we remand to the district court to make findings and conclusions on these questions, without taking additional evidence.

¶ 33 If the district court determines that the Libertarian Party's § 1983 claim was substantial, as defined above, it must next decide whether the claims satisfy the relationship requirement imposed by *Smith*. If the district court concludes that the Libertarian Party's state and § 1983 claims meet the relationship requirement of *Smith*, it must award the Libertarian Party attorney fees in an amount governed by federal law. *See Hensley*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40. If, however, the court finds that the federal claims do not meet the relationship requirement of *Smith*, it must enter a judgment denying attorney fees to the Libertarian Party. Either party may appeal from these determinations.

## V. Conclusion

¶ 34 The judgment dismissing the Libertarian Party's claim for attorney fees under § 1988 is reversed. The case is remanded for the determinations detailed above. In all other respects, the district court's judgment is affirmed.

JUDGE WEBB and JUDGE FOX concur.